# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **CHANDRA Y. SCOTT,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.:** |
| | ] | **1:06-CV-1717-VEH** |
| **HONDA MANUFACTURING OF** | ] | |
| **ALABAMA, LLC, an Alabama** | ] | |
| **corporation,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Chandra Y. Scott ("Scott") initiated this case against Honda Manufacturing of Alabama, LLC ("Honda") on August 30, 2006. (Doc. #1). Scott brings claims of wrongful interference and retaliation under the Family and Medical Leave Act of 1993 ("FMLA" or the "Act"). Pending before the court are Honda's Motion for Summary Judgment (Doc. #19) filed on June 11, 2007, and Honda's Motion to Strike Portions of Plaintiff's Evidentiary Submission Submitted in Opposition to HMA's [*i.e.*, Honda's] Motion for Summary Judgment (Doc. #25) ("Motion to Strike") filed on July 13, 2007. As discussed more fully below, Honda's Motion for Summary Judgment is due to be granted, and Honda's Motion to Strike

is due to be granted in part and denied in part as moot.

## II.    STATEMENT OF FACTS[1]

### A.    Honda Generally

Honda employs approximately 4,500 associates at its Lincoln, Alabama plant,

where it manufactures the Odyssey minivan and the Pilot sport utility vehicle.  AF

No. 1.[2, 3]  Because associate attendance is essential to continued production, Honda

---

[1]These are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).  When the facts are in dispute, they are stated in the manner most favorable to Scott.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[2]The designation "AF" stands for admitted fact and indicates a fact offered by Honda that Scott has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case.  Whenever Scott has adequately disputed a fact offered by Honda, the court has accepted Scott's version.  The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Honda's Statement of Facts as set forth in Doc. #20 and responded to by Scott in Doc. #22.  Similarly, the designation "AAF" stands for additional admitted fact and corresponds to Scott's Statement of Facts contained in Doc. #22 and responded to by Honda in Doc. #24.  Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

[3]Scott did not provide any response to Nos. 1, 18, 24, 26, 35-37, 42, 46, 48-50, 54, 59, 64, 67-68, 70-72, 74-76, 78-82, 85-86, 88, 90, 94-95, and 97 of Honda's Statement of Facts; therefore, they are deemed admitted under Appendix II of the court's Uniform Initial Order.  *See also* Doc. #22 at n.1 ("In an effort to conserve space, the Plaintiff will address in this section only those portions of Defendant's Statement of Facts which Plaintiff disputes, or is without sufficient information to

2

maintains a no-fault attendance policy.   AF No. 2.[4]   The attendance policy is communicated to associates through the Associate Handbook received at the time of hire and explained thoroughly to associates during orientation.  AF No. 3.

Associates must report absences through the absent call-in line, to their Team Manager, and/or an Associate Relations representative. AF No. 4. Associates receive points for attendance occurrences, without regard to whether the absence is excused or unexcused, unless the absence is covered by vacation, paid time off, holidays, bereavement leave, jury duty, FMLA, HMA medical leave, personal leave or other approved time off.  AF No. 5.

Associates receive one (1) point for arriving less than two hours late for a scheduled shift or leaving early while on a scheduled shift.  AF No. 6.  If an associate is absent from work for more than two hours during a scheduled shift, he or she will receive two (2) points.  AF No. 7.  An associate's own medical condition resulting in one (1) to three (3) consecutive days of absence will result in the accumulation of

admit or dispute.").

[4]In responding to Honda's Statement of Facts Nos. 2-11, 15-17, 20-22, 28-30, 32, 34, 39-40, 43, which are all supported with evidentiary citations, Scott has indicated, without making any evidentiary references, that she is without sufficient information to admit or dispute them.  Accordingly, under Appendix II of the court's Uniform Initial Order, these facts are deemed admitted for summary judgment purposes.

only two (2) points.  AF No. 8.

Associates are generally subject to progressive discipline for accruing attendance points, but Honda may impose more serious corrective action if warranted by the circumstances.  AF No. 9.  Generally, associates accumulating three (3) to five (5) points receive a Written Warning; associates accumulating six (6) to eight (8) points receive a Level I Written Counseling; associates accumulating nine (9) to eleven (11) points receive a Level II Written Counseling; and associates are subject to termination for accumulation of twelve (12) or more attendance points.  AF No. 10. Honda provides associates the opportunity to correct attendance violations by allowing two (2) points to drop off if he or she has perfect attendance for at least four (4) months; an additional two (2) points to drop off if the associate has perfect attendance for at least eight (8) months; and all remaining points to drop off if the associate maintains perfect attendance for more than twelve (12) months.  AF No. 11.

### B.    FMLA Leave at Honda

As a general matter, Honda provides up to 12 weeks of FMLA leave to eligible associates with a serious health condition or who are needed to care for a parent, child, or spouse with a serious health condition.  AF No. 12.  While Scott testified that she was not familiar with Honda's FMLA policy, associates are advised about it through the Associate Handbook, which each associate receives upon their hire and

which is explained in new hire orientation.  AF No. 14.

Associates are responsible for making requests for FMLA leave to AR; notice is to be given at least thirty (30) days in advance for foreseeable leave and by the third workday missed for unforeseeable leave.  AF No. 15.  Honda requires submission of a medical certification when leave is needed for the associate's own health condition or to care for a parent, child, or spouse.  AF No. 16.  Honda utilizes a third-party administrator to process FMLA leave requests and to obtain the necessary paperwork and medical certification.  AF No. 17.  During 2005, Honda utilized Broadspire Integrated Disability Management ("Broadspire") to administer FMLA leave.  AF No. 18.

While Honda still had ultimate authority for making FMLA eligibility determinations, Broadspire, as the administrator, was delegated the responsibility for making the FMLA decisions.  AF No. 19.  Honda did not interfere with Broadspire's determinations, but instead provided FMLA request forms as requested by associates and handled questions that arose during the FMLA process.  AF No. 20.  Honda also provides medical leave for health conditions incapacitating the associate for more than three (3) consecutive business days; this leave is generally available to associates not qualifying for FMLA leave.  AF No. 21.  Honda also gives its associates paid time off ("PTO"), which associates accrue based on hours of service after working for one

year.  AF No. 22.

### C.    Scott's Employment and Attendance Record at Honda

Scott was hired by Honda as a Process Associate on May 10, 2004.  AF No. 24. While Scott testified that she was unfamiliar with Honda's FMLA policy, she received an Associate Handbook, including Hond's attendance and FMLA policies, at the time of her hire, and received an explanation of these policies during orientation.  AF No. 25.  Scott understood that Honda maintained a point system for attendance and that accumulation of twelve (12) points could subject her to termination.  AF No. 26.  Although it is unclear exactly when, at some point Scott understood that Honda had in place an FMLA policy.  AF No. 27.

On May 20, 2004, Scott was late clocking in and received one (1) point.  AF No. 28.  Scott was absent for more than 2 hours on May 24, 2004, and received two (2) points.  AF No. 29.  Because she had accumulated 3 attendance points within the first month of her employment, Scott received a Written Warning on June 8, 2004. AF No. 30.

Scott disputes that she was absent on July 23, 2004,[5] but Honda recorded her

_____

[5]According to Scott, Mr. Carter improperly marked her absent, possibly because of her name change.

as such so she received two (2) additional points, and had a total of five (5) points. AF No. 31. On August 25, 2004, Scott was absent for more than two (2) hours due to a court appearance and received two (2) more attendance points. AF No. 32. Because she had accrued seven (7) attendance points, Scott received a Level I Written Counseling on August 26, 2004. AF No. 33. Scott was absent for more than two (2) hours on November 2, 2004, and received two (2) additional attendance points, resulting in a total of nine (9) points. AF No. 34.

Because she accrued nine (9) attendance points, Scott was issued a Level II Written Counseling on November 10, 2004. AF No. 35. On March 23, 2005, Scott was late clocking in and received one (1) attendance point, bringing her total at that time to nine (9) points, as the two (2) attendance occurrences from May 2004 had since dropped off. AF No. 36. Scott received a Formal Coaching from her Team Manager on April 5, 2005, as she should have received a Level I Written Counseling in November 2004 but did not. AF No. 37.

On September 13, 2005, Scott received two (2) points for her absence of more than two (2) hours. AF No. 39. Scott was absent again on September 26, 2005, and accrued two (2) more attendance points. AF No. 40. Because she had accrued ten (10) attendance points, Scott received a Level II Written Counseling on October 7, 2005, and was warned that any further absences could result in the termination of her

7

employment with Honda.  AF No. 41.  Therefore, Scott understood that she was subject to termination for one more attendance occurrence.  AF No. 42.  By December 2005, Scott had exhausted all her available PTO.  AF No. 43.

### D.    Scott's Mother's Medical Condition

In September 2005, Scott's mother, Alice Scott , a registered nurse at Medical Center East, underwent stress and other testing after experiencing shortness of breath. AF No. 44.  The doctors could not determine from the tests what was wrong with Scott's mother, and she was released from the hospital the following day.  AF No. 45. One of Scott's September 2005 absences, which she reported only to fellow Process Associate Tommy Williams ("Williams"), was due to her going to the hospital to be with her mother during her testing.  AF No. 46.  While Scott needed to be there for her mother during a time of grave medical concern, she did not provide any physical care for her mother during the September 2005 overnight stay.  AF No. 47.

Scott returned to work after a 1-day absence, but did not seek FMLA leave for that date.  AF No. 48.  Scott learned in September that her mother would undergo an additional testing procedure via a heart catheterization.  AF No. 49.  Dr. Van Reeder ("Dr. Reeder") conducted a heart catheterization test procedure on Mrs. Scott on October 25, 2005.  AF No. 50.  Scott, accompanied by her adult daughter, drove her mother to the hospital on October 25, 2005.  AF No. 51.

8

After the procedure, Dr. Reeder told Scott nothing other than her mother did not require a stent and was going to be fine. AF No. 54. Scott's mother was discharged that same day (October 25, 2005) and was instructed to follow up with her regular physician and to limit her activity for 48 hours, but was not given any indication about what limitations, if any, should be observed after the 48 hour period. AF No. 55; AAF No. 14. Scott drove her mother, who was groggy and sore, but also was conscious and able to walk, home. AF No. 56.

While Scott's mother came out of the hospital in a wheelchair and was extremely limited in her ability to get around, to bend, or to lift anything, she was able to walk, to bathe and to dress herself. AF No. 57. Though scheduled to work, Scott had made arrangements to miss it by requesting FMLA leave, and she remained with her mother on the following day of October 26, 2005. AF No. 58. Scott's adult daughter and sister also came to Scott's mother's home on the afternoon of October 26, 2005. AF No. 59.

Scott returned to work on October 27, 2005, and, when she called to check on her mother, learned that she was doing okay. AF No. 60. Although Scott was still monitoring her mother's recovery, her mother fully recovered within 48 hours of the procedure and returned to work with no restrictions. AF No. 61. Dr. Reeder's diagnosis of Scott's mother's condition as stated in the discharge summary

9

specifically states:

DIAGNOSIS:

    (1)    Noncardiac chest pain.
    (2)    Nonobstructive coronary artery disease.
    (3)    Hypoxia.
    (4)    Frequent premature ventricular contractions.
    (5)    Hypertension.
    (6)    Hyperlipidemia.

AF No. 62; Doc. #21 at Ex. A at Ex. 10.  Scott's mother did follow up with her doctor after the procedure.  AF No. 63.

### E.    Scott's Request for FMLA Leave

Scott was not eligible for FMLA leave at Honda until May 2005, 12 months after her date of hire.  AF No. 64.  Kim White ("White"), the Associate Relations representative present during the October 7, 2005 meeting, advised Scott as to the potential availability of FMLA leave for her mother's condition.  AF No. 67.  Scott thereafter obtained FMLA paperwork from Associate Relations, was instructed to submit it to Broadspire, and was told to contact Broadspire for questions related to her FMLA application and status.  AF No. 68.

Scott understood it was her responsibility to ensure that all documentation supporting her FMLA request was turned in on time.  AF No. 70.  When filling out her FMLA packet, she consulted with a Broadspire representative, who told her to

seek intermittent leave based on what plaintiff described about the testing to be conducted.  AF No. 71.  After speaking with a Broadspire representative, she notified Broadspire in writing by filling out forms on or about October 20, 2005, in which she requested leave to care for her mother, who she represented would be hospitalized and unable to care for herself for three (3) days after surgery.  AF No. 73.  Scott certified that she was truthful and accurate in completing her leave documentation. AF No. 72.

At the time Scott requested leave, Broadspire instructed her that supporting medical documentation would be due within 21 calendar days, or November 10, 2005.  AF No. 74.  Scott was absent on October 25-26, 2005, and understood that, if her absences were not approved as FMLA, she would exceed her allotted twelve (12) points.  AF No. 75.  Scott gave the medical certification form to her mother to deliver to Dr. Reeder.  AF No. 76.  The initial medical certification Scott provided to Broadspire represented that her mother would be unable to care for herself for three (3) days after her surgery, may possibly be hospitalized overnight, but did not indicate a discharge date.  AF No. 77.

Broadspire's Leave Coordinator, Joelle Lafontant ("Lafontant") left Scott several messages during November 2005 to obtain the discharge date and dates of incapacity necessary to determine her FMLA eligibility for her October 25 and

October 26 absences.  AF No. 78.   Thomas put Scott in touch with Lafontant so that
Scott could provide the missing information.  AF No. 79.  Scott and Freddie Thomas
("Thomas"), Honda's Administrator of Associate Relations at its Lincoln, Alabama
plant, called Dr. Reeder's office to request the information, and Thomas explained to
the receptionist that the requested information should be provided directly to
Broadspire.  AF No. 80.

Dr. Reeder's office faxed the requested information, including a discharge date
of October 25, 2005, to Lafontant.   AF No. 81.  The only medical information
provided to Broadspire from Scott's mother's physician did not indicate a medical
diagnosis (specifically relevant to the heart procedure),[6] did not reflect an overnight
hospital stay or more than three (3) days of incapacity, and did not state that Scott was
needed to care for her mother.  AF No. 82.  Scott's request for FMLA leave was
denied by Broadspire on December 8, 2005.  AF No. 83.   Honda authorized
Broadspire to make the decision and confirmed the decision.  AF No. 84.

**F.    Scott's Dismissal from Honda**

As of November 30, 2005, Scott's attendance point total, including the October
25-26 absences, equaled fourteen (14), but HMA took no corrective action because

---

[6]While Scott does not dispute this particular fact offered by Honda, the court
clarifies that the discharge papers do reflect a diagnostic summary of Scott's mother's
overall health condition.  AF No. 62.

of her pending request for FMLA leave.  AF No. 85.  On or about December 7, 2005,

Associate Relations learned that Scott's request for FMLA leave for October 25-26,

2005 had been denied by Broadspire, which determination Honda accepted.  AF No.

86; AAF. No. 27.  As a result of the denial of Scott's FMLA leave request, her

attendance point total remained fourteen (14); had her leave request been approved

her point total would have been reduced to her October 7, 2005 level of ten (10).  AF

No. 87; AAF No. 20.  Because she had accrued twelve (12) or more attendance

points, Thomas recommended Scott's termination to Associate Relations Team

Manager Robb Harris ("Harris") and Department Manager Linda Bailey ("Bailey").

AF No. 88.  Subsequently, Scott's employment with Honda was terminated on

December 15, 2005, for accruing twelve or more attendance points in violation of its

attendance policy.  AF No. 90; AAF No. 18.  Thomas has recommended termination

of other Honda associates who had more than twelve (12) attendance points and who

had not sought FMLA leave to cover those absences.  AF No. 93.[7]

## G.   Scott's Complaint

Scott contends that Honda unlawfully interfered with her right to FMLA leave

and retaliated against her for seeking such leave by terminating her employment.  AF

_____

[7]Scott's response to this particular fact does not dispute it from an evidentiary
standpoint; instead Scott merely maintains that Honda's treatment of other
comparative associates is irrelevant to the legal inquiry.  This court disagrees.

No. 94.  Scott believes it was unfair to count her October 25 and 26 absences against her because she sought FMLA leave for those dates.  AF No. 95.  Scott also contends that Honda did not properly designate the October 25 and 26, 2005 absences as non-FMLA qualifying.  AF No. 97.  During her deposition related to this case, Scott testified that she did not know whether Honda followed its policies and procedures. AF. No. 96.

## III.   STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the

evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV.   ANALYSIS

### A.   Honda's Motion to Strike

Honda has moved to strike a number of evidentiary items submitted by Scott in opposition to its Motion for Summary Judgment.  The court has viewed all the evidence, including that evidence objected to by Honda, in the light most favorable to Scott as the non-movant, and has concluded that, with the exception noted *infra*, at note 10, even if all of Scott's evidence is admissible, summary judgment is still due to be granted in favor of Honda as to all of her claims.  Therefore, the court need not address each of Honda's arguments with respect to the admissibility of evidence, and,

except to the evidence excluded as stated in note 10, the motion to strike will be

denied as moot.

**B.    Honda's Motion for Summary Judgment**

**1.    FLMA Generally**

The FMLA entitles an eligible employee to, *inter alia*, twelve work weeks of

leave during any twelve-month period "because of a serious health condition that

makes the employee unable to perform the functions of the position of such

employee." 29 U.S.C. § 2612.  A serious health condition as it pertains to Scott's

mother's situation is defined as:

> (1) Inpatient care (i.e., an overnight stay) in a hospital, hospice, or
> residential medical care facility, including any period of incapacity (for
> purposes of this section, defined to mean inability to work, attend school
> or perform other regular daily activities due to the serious health
> condition, treatment therefor, or recovery therefrom), or any subsequent
> treatment in connection with such inpatient care; or
>
> (2) Continuing treatment by a health care provider. A serious health
> condition involving continuing treatment by a health care provider
> includes any one or more of the following:
>
>> (i) A period of incapacity (i.e., inability to work, attend
>> school or perform other regular daily activities due to the
>> serious health condition, treatment therefor, or recovery
>> therefrom) of more than three consecutive calendar days,
>> and any subsequent treatment or period of incapacity
>> relating to the same condition, that also involves:
>>
>>> (A) Treatment two or more times by a health

care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(1)-(2)(i).

In addressing whether a serious health condition exists, an employer may require medical certification from the requesting employee:

(a) In general

An employer may require that a request for leave under subparagraph (C) or (D) of section 2612(a)(1) of this title be supported by a certification issued by the health care provider of the eligible employee or of the son, daughter, spouse, or parent of the employee, as appropriate. The employee shall provide, in a timely manner, a copy of such certification to the employer.

29 U.S.C. § 2613(a).

Further, as defined by the Act, sufficient medical certification includes:

(b) Sufficient certification

Certification provided under subsection (a) of this section shall be sufficient if it states--

(1) the date on which the serious health condition commenced;

17

(2) the probable duration of the condition;

(3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;

(4)(A) for purposes of leave under section 2612(a)(1)(C) of this title, a statement that the eligible employee is needed to care for the son, daughter, spouse, or parent and an estimate of the amount of time that such employee is needed to care for the son, daughter, spouse, or parent;

29 U.S.C. § 2613(b).

To secure the rights provided by the FMLA, the Act creates two types of claims aggrieved employees may bring against employers alleged to be in violation of the Act:  interference claims, in which employees assert that their employers denied or otherwise interfered with their rights under the Act, and retaliation claims, in which employees assert that their employers discriminated against them because they engaged in activity protected by the Act.  *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).  Scott asserts both an interference and a retaliation claim. The court will address each separately.

## 2.    Interference

To state a claim of interference under the FMLA, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to [a] benefit denied." *Strickland*, 239 F.3d at 1207.  Scott contends that she was entitled to, but denied, FMLA leave with respect to her absences from work on October 25 and 26,

2005.  The court is of the opinion that Scott's interference claim must fail as she has

not produced sufficient evidence from which a reasonable factfinder could conclude

that she was entitled to FMLA leave on those dates.

More specifically, the court concludes that Scott has failed to demonstrate a

qualifying event under the FMLA because she lacks sufficient evidence to show  that

her mother was suffering from a serious health condition as defined by 29 C.F.R. §

825.114(a)(1)(2)(i).  "[N]ot all leave requested or taken for medical reasons qualifies

for the FMLA's protections.  For this reason, employers have a statutory right to

require an employee requesting FMLA leave to obtain certification that attests to the

employee's eligibility for such leave from a health care provider."  *Cash v. Smith*, 231

F.3d 1301, 1307 (11th Cir. 2000).  Under Honda's policy and consistent with the Act,

an employee seeking FMLA leave must produce a supporting medical certification

for the absence.  Scott did not provide Honda with the appropriate certification that

her mother's medical condition met the statutory standard, *Cash*, 231 F.3d at 1307;

in fact, the medical records supplied in support of Scott's FMLA leave request for the

time period in question indicate that Scott's mother's condition did not meet the

statutory standard.  AF No. 82.

To elaborate, Scott's mother did not stay in the hospital overnight, which

means her procedural treatment does not qualify as a serious medical condition under

29 C.F.R. § 825.114(a)(1). Similarly, Scott's mother's testing and subsequent recovery does not qualify under the continuing treatment prong because Scott lacks evidence that her mother endured a period of incapacity "of more than three consecutive calendar days[.]"

As held by the Eleventh Circuit, "29 C.F.R. § 825.114, the Department of Labor's regulation requiring that an employee be incapacitated for more than three consecutive calendar days in order to have a qualifying 'serious health condition,' is valid. And it is properly understood to require more than three consecutive full days of incapacity; consecutive partial days are not enough." *Russell v. North Broward Hosp.*, 346 F.3d 1335, 1346 (11th Cir. 2003). Likewise, there is no suitable evidence of a certification submitted to Broadspire which confirms that Scott's mother suffered from a serious medical condition, much less that Scott was needed to care for her mother, including an estimated period of time needed for that care. AF No. 82.

Based upon the information provided to Broadspire, the court concludes that Scott has not adduced sufficient evidence from which a reasonable factfinder could conclude that her October absences were taken "because of a serious health condition" of her mother, *see* 29 U.S.C. § 2612, or were properly certified as FMLA leave, including Scott's role as a necessary care provider to her mother for an estimated duration. 29 U.S.C. § 2613. As such, no reasonable factfinder could

conclude that "the medical leave that she did take was [protected] under the auspices

of the FMLA," *Cash*, 231 F.3d at 1307, and as such, summary judgment is due to be

granted as to Scott's FMLA interference claim.[8]

---

[8]Scott's efforts in her opposition to characterize her leave as intermittent (Doc. #22 at 19-20) miss the mark because, regardless of the type of FMLA leave sought, preliminarily she must show the existence of a serious health condition and proper medical certification, which she has not. *See, e.g.*, 29 C.F.R. § 825.203(a) ("Intermittent leave is FMLA leave taken in separate blocks of time due to a single qualifying reason."). Similarly, she is unable to show an FMLA violation based upon the two (2)-day rule listed in 29 C.F.R. § 825.208(b)(1) (*see* Doc. #22 at 25), which applies when an FLMA-qualifying event has occurred. *See* 29 C.F.R. § 825.208(b)(1) ("Once the employer has acquired knowledge that the leave is being taken for an FMLA required reason, the employer must promptly (within two business days absent extenuating circumstances) notify the employee that the paid leave is designated and will be counted as FMLA leave."). Finally, the record does not support that Honda violated 29 C.F.R. § 825.208(e)(2) either. Section 825.208 provides in pertinent part:

> Employers may not designate leave as FMLA leave after the employee has returned to work with two exceptions:  . . .
>
> > (2) If the employer knows the reason for the leave but has not been able to confirm that the leave qualifies under FMLA, or where the employer has requested medical certification which has not yet been received or the parties are in the process of obtaining a second or third medical opinion, the employer should make a preliminary designation, and so notify the employee, at the time leave begins, or as soon as the reason for the leave becomes known.

29 C.F.R. § 825.208(e)(2).  Therefore, this regulation applies to situations in which an employer designates leave as FMLA after an employee returns to work.

Nonetheless, assuming that the provision is applicable to Scott's situation, she

### 3.    Retaliation

#### a.    No *prima facie* case of FMLA retaliation exists.

To succeed on an FMLA retaliation claim, "an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right."  *Strickland*, 239 F.3d at 1207.  Scott presents no direct evidence of retaliatory intent;[9] therefore, her FMLA claim proceeds under a burden-shifting analysis.  To state a *prima facie* case of retaliation, Scott must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) the decision was causally

---

was given a preliminary indication that her leave potentially qualified under FMLA, but that additional documentation would be necessary to verify its suitability under the Act.  Relatedly, Broadspire did not receive any additional information regarding Scott's mother's incapacity until November 30, 2005. *See* Doc. #21 at Ex. F at 14.  Moreover, as clarified on December 1, 2005, Scott's mother returned to work on October 27, 2005, and therefore was not incapacitated for over three (3) consecutive days (and thus did not meet the alternative definition of a serious medical condition under the Act). *Id.*

[9]Direct evidence of discriminatory or retaliatory intent is evidence that, "if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Burrell v. Bd. of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997).  For instance, a statement by the decision-maker that Scott was being fired because of her application for FMLA leave would qualify as direct evidence of retaliatory intent.  However, the record is devoid of any such "blatant remark[ ], whose intent could be nothing other than to [retaliate]" that qualifies as direct evidence. *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

related to the protected activity. *Id.*  As with Title VII retaliation claims, if Scott establishes a *prima facie* case of retaliation, the employer has the burden of articulating a legitimate, nondiscriminatory reason for the adverse action, and Scott is left with the ultimate burden of proving that the reason or reasons articulated by the employer are mere pretext for retaliation. *Cf. Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.") (citation omitted).

The court is not satisfied that Scott has presented evidence sufficient to state a *prima facie* case and to thereby raise an inference of retaliation. Although Scott was terminated from her employment on December 15, 2005, thus establishing the second element of the *prima facie* case, there is no evidence to suggest that Scott engaged in some FMLA statutorily protected activity that resulted in her separation from Honda. *See Cash*, 231 F.3d at 1307 ("In this case, Cash has failed to present evidence that she exercised a protected right under the FMLA.").

Specifically, as the court has already concluded, there is no evidence to support a conclusion that the October absences qualify for FMLA leave coverage:  (1) Scott's mother did not have a serious health condition, and (2) Scott was not medically

23

certified as being needed to care for her mother.  Therefore, having failed to establish

that Scott was entitled to FMLA leave in October, she cannot substantiate the first

*prima facie* element in support her FMLA retaliation claim.  *See Russell*, 346 F.3d at

1340 ("We need not decide which of those two legal theories Russell pursued in the

district court, because it does not matter.  Interference and retaliation claims both

require the employee to establish a 'serious health condition,' and as we will explain,

Russell has failed to do that.  As a result, she has not established her entitlement to

a benefit even under the more employee-friendly interference theory.").

As expressly held by the Eleventh Circuit, when a plaintiff bases her retaliation

claim on "an attempt to exercise a right that is not provided by [the] FMLA," she

cannot prevail, even if "'[she] mistakenly asks for FMLA leave although [she is]

ineligible.'"  *Walker v. Elmore County Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir.

2004) (citation omitted); *see also Cash*, 231 F.3d at 1307 (holding that employee

cannot maintain FMLA retaliation claim when physician's certification shows she

does not have serious health condition).  Therefore, because Scott cannot establish

a *prima facie* case of retaliation under the FMLA due to a lack of proof as to the

protected activity element, summary judgment as to that claim is due to be granted.

### b.   Alternatively, the record lacks sufficient evidence of pretext.

Alternatively, Honda is entitled to summary judgment on Scott's retaliation claim due to her inability to show sufficient evidence of pretext.  Honda's legitimate, non-discriminatory reason for terminating Scott's employment, as set forth in its summary judgment papers is:  "[Scott], who had received multiple attendance corrective action, violated [Honda]'s attendance policy by accruing 12 or more points."  (Doc. #20 at 32).  As Honda has come forward with a legitimate, nondiscriminatory reason, *see Earl v. Mervyn's, Inc.*, 207 F.3d 1361, 1368 (11th Cir. 2000) (holding that employer's decision to fire employee for violation of punctuality policy after multiple warnings is legitimate, non-retaliatory reason for separation, not violating FMLA), the ultimate burden shifts back to Scott to present evidence that the reason offered is not the true reason but is a pretext for discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-17 (1993); *see also Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) ("To show pretext, a plaintiff must come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.") (internal quotations and citations omitted).  The

court agrees with Honda that Scott has failed to meet this burden.

Scott does not dispute that she was discharged for violating the attendance policy. Even prior to her October absences, she understood that she was subject to termination if they were not approved. AF Nos. 42,75. Scott has not adduced any evidence to show that Honda acted inconsistently with its applicable attendance policy or in its administering corrective action to Scott four (4) times for absences not related to her mother's health and five (5) times prior to her ever making a request for FMLA leave.[10] AF Nos. 30, 33, 35, 37.

To elaborate, Scott was given an additional opportunity to correct her absenteeism via the Formal Coaching received in March 2005. AF No. 37. Moreover, Thomas, the decisionmaker recommending her dismissal, has similarly

_____

[10]Scott testified during her deposition that one (1) point which had been improperly charged against her for being late (when she was on time, but late clocking in) was later removed and confirmed that as of October 7, 2005, she had accumulated ten (10) attendance points. AAF No. 26; Doc. #21 at Ex. A at 89-90. To the extent that Scott attempts to recalculate her accumulated attendance points in Exhibit 2 of her evidence in opposition to summary judgment (Doc. #23 at Ex. 2), this document is due to be disregarded as inconsistent with her prior deposition testimony. *See Van T. Junkins v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1983) ("[A] party cannot . . . create . . . an issue [of fact] with an affidavit [or an unsworn to handwritten notation] that merely contradicts, without explanation, previously given clear testimony."); *see also Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'") (footnote and citation omitted). Accordingly, Honda's Motion to Strike Scott's affidavit as to this particular evidence is due to be granted.

recommended the separation of other Honda associates whose attendance occurrences exceeded twelve points and who did not seek FMLA leave to cover those absences. AF No. 93.   Likewise, Scott has identified no similarly situated associate with fourteen (14) attendance points who did not request FMLA leave and who was nevertheless retained by Honda.  Therefore, Scott is unable to show pretext through comparative evidence.

Scott is similarly unable to demonstrate pretext through the temporal proximity of her FMLA leave request in October and the decision to deny her leave request and fire her in December.  *See Hurlbert*, 439 F.3d at 1298 (recognizing that time elapse of two (2) weeks between FMLA leave request and termination standing alone is insufficient to show pretext) (citing *Wascura v. City of South Miami*, 257 F.3d 1238, 1244-45 (11th Cir. 2001)).  In this instance, the passage of time taken in the light most favorable to Scott is over one (1) month,[11] which elapse by itself cannot establish pretext as a matter of law.  Therefore, Scott's retaliation claim alternatively fails due to a lack of sufficient pretext evidence.

## V.   CONCLUSION

For the reasons stated above, Honda's Motion for Summary Judgment is due

---

[11]Scott notified Broadspire of her FMLA leave request on October 20, 2005. On December 8, 2005, Broadspire denied Scott's FMLA leave request.  A week later, on December 15, 2005, Honda discharged Scott under its attendance policy.

to be granted as to both Scott's FMLA interference and retaliation claims.  Honda's

Motion to Strike is due to be granted in part as set forth in note 10, and otherwise

denied in part as moot.  A separate order will be entered.

      **DONE** and **ORDERED** this the 30th day of July, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge